

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

ANTHONY ANTONIO FOSTER,

        Plaintiff,

           -against-

FATU SAER DIOP; STAR SECURITY GUARD
TRAINING CO.; PAMELA DICKERSON,

        Defendants.
------------------------------------x

**ORDER OF**
**PARTIAL DISMISSAL**

11-CV-4731 (KAM)(JMA)

**MATSUMOTO, United States District Judge:**

        On September 26, 2011, *pro se* plaintiff Anthony Antonio
Foster ("plaintiff"), who is currently incarcerated at Washington
Correctional Facility, commenced this civil rights action
pursuant to 42 U.S.C. § 1983 against Fatu Saer Diop, Star
Security Guard Training Co. and Parole Officer Pamela Dickerson
(collectively, "defendants"), and requested to proceed *in forma
pauperis* pursuant to 28 U.S.C. § 1915. Plaintiff's request to
proceed *in forma pauperis* is granted. In addition, for the
following reasons, plaintiff's claims against Parole Officer
Pamela Dickerson and Fatu Saer Diop may proceed, but his claim
against Star Security Guard Training Co. is dismissed without
prejudice[1] for failure to state a claim.

---

[1] The court grants plaintiff leave to replead his claim against Star Security
Guard Training Co., but if plaintiff does not do so within 30 days, the court
will deem his claim against Star Security Guard Training Co. dismissed with
prejudice.

1

## BACKGROUND

The following facts are drawn from plaintiff's complaint and are taken as true for purposes of this order. In June 2009, Fatu Saer Diop ("Diop"), a former parole officer, hired plaintiff as a custodian for property located at 1891 Fulton Street (the "Fulton Street property") in Brooklyn, New York. (ECF No. 1, Complaint ("Compl.") ¶ 1). In July 2009, Diop opened a business called "Star Security Guard Training Co." ("Star Security Training") at the Fulton Street property and enlisted plaintiff to act as a secretary for the company. (*Id.* ¶ 2.) In August 2009, Diop trained plaintiff to be an instructor for Star Security Training's defensive driving and security guard programs. (*Id.* ¶ 3.) Four months later, in December 2009, Diop hired plaintiff to provide janitorial services at 662 St. Marks Avenue, a second location in Brooklyn, New York (the "St. Marks property"). (*Id.* ¶ 7.) In exchange for providing these services to Diop, plaintiff was permitted to live rent-free in the basement of a building at the St. Marks property. (*Id.*)

In January 2010, however, Diop informed plaintiff that she was experiencing financial difficulties and that she expected plaintiff to reimburse her for taxes that she allegedly paid on behalf of plaintiff. (*Id.* ¶ 8.) Diop also began to charge monthly rent in the amount of $500 for plaintiff's continued

2

habitation at the St. Marks property. (*Id.*) When plaintiff protested that these financial burdens presented hardships and were unfair, Diop fired him from his employment at the St. Marks property and informed him that he could longer live there. (*Id.* ¶¶ 8-9). In addition, Diop:

> brought to [plaintiff's] attention her *past* employement [sic] as a Parole Officer, and advised [him] of [his] best interest to continue [his] employment at Star Security Guard Training Co., and explained the result of being sent back to prison if such unofficial duties were mentioned or complained to the proper persons of matter.

(*Id.* ¶ 9 (emphasis in original) (internal quotation marks omitted)). Thereafter, plaintiff continued to work for Diop at Star Security Training at the Fulton Street property. (*Id.* ¶ 10.)

In May 2010, during a routine visit to his parole officer, Pamela Dickerson ("Officer Dickerson"), plaintiff learned from Officer Dickerson that Diop had accused plaintiff of using drugs and committing theft while in Diop's employ. (Compl. ¶ 13). When plaintiff confronted Diop about the accusations, she denied the statements and asserted that Officer Dickerson had fabricated the allegations. (*Id.* ¶ 14.) Nevertheless, plaintiff believed that Diop had "made a desperate attempt to have me

[found to be] in violation of Parole by claiming false and eroneous [sic] accusations upon me." (*Id.* ¶ 15.)

Nevertheless, it appears that plaintiff continued to work at Star Security Training for Diop, and in July 2010, Diop instructed him to "forge" her name on certifications issued to participants who completed the Star Security Training program. (*Id.* ¶ 21.) Diop purportedly made this request because she did not want to visit the Star Security Training premises because she believed that her employer, the Human Resources Administration of the City of New York ("HRA"), was investigating her. (*Id.*)

On August 24, 2010, Diop fired plaintiff from his employment at Star Security Training. (*Id.* ¶ 23.) Three days later, plaintiff met with both a "Chief Inspector" and an "Inspector General" for the HRA; during these meetings, plaintiff disclosed and detailed Diop's prior threats to exercise her influence as a former parole officer to silence him from mentioning or complaining about his work for Diop. (*Id.* ¶¶ 9, 24.) Later that evening, plaintiff alleges, Parole Officer Dickerson and "6 or 7 other Parole Officers" arrested plaintiff without reason and held him at Rikers Island. (Compl. ¶ 25.)

In September 2010, Officer Dickerson and Diop testified against plaintiff at a parole revocation hearing. (*Id.* ¶ 28.) Diop in particular testified--falsely, according to plaintiff--

4

that plaintiff caused Diop to fear for her life, and that although the courts and police refused to assist her because plaintiff is "a known murderer," they advised her to bring her complaints to plaintiff's parole officer, Officer Dickerson. (*Id.*) In addition, Diop "used [plaintiff] to cover up her illegalness [sic] at Star Security Guard Training Co." by complaining that plaintiff unlawfully sold certifications from the training program without her consent, and telling the authorities that plaintiff "would kill or have her killed" if Diop fired him or caused him to be imprisoned. (*Id.*) Following this hearing, plaintiff was released from Rikers Island and reinstated to parole. (*Id.* ¶ 29.)

Upon his release, numerous people informed plaintiff that Diop was disappointed about his release from prison, and that she intended to "continue more attempts of having [plaintiff] incarcerated." (*Id.* ¶ 31.) As a result, plaintiff feared for his freedom and his life, and fled from Brooklyn to Middletown, New York, where he remained until April 2011, when he was apprehended and arrested for violating parole by abscondment. (*Id.* ¶¶ 31-32.) Plaintiff was subsequently found guilty of absconding and sentenced to eighteen months imprisonment for this parole violation. (*Id.* ¶ 34.) Plaintiff now seeks release from

incarceration and monetary damages for defendants' alleged violations of his civil rights. (*Id.* at 5.[2])

**DISCUSSION**

I.    **Standard of Review**

  A. **Dismissal of Prisoner Action**

Under 28 U.S.C. § 1915A, a district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or employee of a governmental entity." 28 U.S.C. § 1915A(a). Upon review, a district court shall dismiss a prisoner complaint *sua sponte* if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

  B. **Dismissal of an *In Forma Pauperis* Action**

Similarly, a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). An action is "frivolous" when either: (1) "the

---

[2] The first five pages of plaintiff's complaint were not marked by paragraphs; therefore, the court references this section by page number.

factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy"; or (2) "the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks omitted) (quoting *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990)).

At the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal,* --- U.S.---, 129 S.Ct. 1937, 1949-50 (2009)). To survive dismissal, however, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### C. *Pro Se* Submissions

It is axiomatic that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys and that the court is required to read the plaintiff's *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. *United States v. Akinrosotu*, 637 F.3d 165, 167 (2d Cir. 2011). Although the court applies these less stringent standards in analyzing plaintiff's claims, the court also notes that a "*pro se* plaintiff is not relieved of pleading

requirements, and failure to plead the basic elements of a cause of action may result in dismissal." *Andino v. Fischer*, 698 F. Supp. 2d 362, 376 (S.D.N.Y. 2010); *Pandozy v. Segan*, 518 F. Supp. 2d 550, 554 (S.D.N.Y. 2007) ("[P]*ro se* status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure.")

## II. Sufficiency of the Pleadings as to Section 1983 Claim

### A. Pleading Standard

In relevant part, 42 U.S.C. § 1983 ("Section 1983") provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 itself does not create any substantive rights; rather, it provides a procedural mechanism for redressing the deprivation of rights created by the Constitution or laws of the United States. *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To state a cognizable claim under Section 1983, plaintiffs must allege that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 568 (E.D.N.Y. 2011) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)).

The Supreme Court has held that "the under-color-of-state-law element of [Section] 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks and citation omitted); *cf. Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) ("[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'") (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

## B. Application

### 1. Star Security Training

Liberally construing the complaint and accepting plaintiff's well-pleaded allegations as fact, the court finds

9

that the complaint fails to state a Section 1983 claim against Star Security Training because it inadequately pleads the first element of a Section 1983 claim: that "the challenged conduct was attributable at least in part to a person who was acting under color of state law." *Weiss*, 762 F. Supp. 2d at 568. Although plaintiff does not allege any specific constitutional wrong in the complaint, it appears that he is suing defendants for the loss of his liberty and their conspiracy to effectuate such loss.

Plaintiff nowhere alleges, however, that Star Security Training played any role in causing that deprivation. In fact, the complaint does not assert *any* wrongs allegedly committed by Star Security Training. Therefore, the claim against Star Security must be dismissed for failure to state a claim. *See Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010) (affirming dismissal of Section 1983 claims because plaintiff "failed to allege sufficient personal involvement on [defendant's] part to make him liable under [Section] 1983"); *Aguiar v. Terrell*, No. 11-CV-3944, 2011 WL 3665170, at *1 (E.D.N.Y. Aug. 19, 2011) (dismissing Section 1983 claim against defendant because plaintiff failed to "allege facts to support a claim that [defendant] had any personal involvement in the alleged deprivation of plaintiff's civil rights").

## 2. Officer Dickerson

Plaintiff's well-pleaded allegations, taken as true, are sufficient to state a Section 1983 claim against Officer Dickerson. First, plaintiff adequately alleged that the constitutional deprivations he suffered were "attributable at least in part" to Officer Dickerson, who as a parole officer acting in her official capacity was indisputably acting under color of state law for purposes of a Section 1983 action. *See Oliver v. Cuttler*, 968 F. Supp. 83, 87 (E.D.N.Y. 1997) (actions of parole officer taken in his official capacity were "under color of state law" for purposes of Section 1983 action).

Second, plaintiff's complaint adequately pleads that Officer Dickerson's conduct, which resulted in his allegedly wrongful imprisonment, "deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Weiss*, 762 F. Supp. 2d at 568. Therefore, plaintiff's Section 1983 claim against Officer Dickerson survives dismissal at this stage of the case.

### C. Diop

Although Diop is a private actor, under a liberal interpretation of the complaint, she conspired with Officer Dickerson, a state actor, to unjustly revoke plaintiff's parole,

11

thereby depriving plaintiff of his constitutional rights. "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir. 1992)). Furthermore, there must be "such a close nexus" between the private actor and the state that underlying conduct "may be fairly treated as that of the state itself." *Tancredi v. Metro. Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003).

Here, the court notes without deciding that plaintiff may not have demonstrated a sufficiently close nexus between Diop and Officer Dickerson. In light of the fact the court is obligated to liberally construe the complaint, however, the court declines to dismiss Diop as a defendant at this juncture.

### III. Request for Immediate Release from Prison

Finally, plaintiff's request for immediate release from incarceration is not a remedy that this court has the authority to grant in a Section 1983 action. *See Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) (a petition for habeas corpus is the exclusive means for seeking the relief of immediate release from

prison; such relief is not cognizable under Section 1983); *see also McLean v. Brown*, No. 08 CV. 5200, 2010 WL 2609341, at *5 (E.D.N.Y. June 25, 2010) (finding that prisoner's request for release from prison is "not properly cognizable in a claim under [Section] 1983" because "[h]abeas corpus provides the exclusive federal remedy for a state prisoner who wishes to challenge the fact of his conviction").

## CONCLUSION

For the foregoing reasons, plaintiff's claim against Star Security Guard Training Co. is dismissed for failure to state a claim. Accordingly, it is hereby:

**ORDERED** that plaintiff's claim against defendant Star Security Guard Training Co. is dismissed without prejudice.[3] *See* 28 U.S.C. § 1915(e)(2)(B). No summons shall issue as to this defendant, and it is further

**ORDERED** that the United States Marshals Service is directed to serve the summons and complaint upon Parole Officer Pamela Dickerson and Fatu Saer Diop, without prepayment of fees, and it is further

---

[3] As indicated in footnote 1, if plaintiff wishes to replead his claim against Star Security Guard Training Co., he must do so within 30 days. If plaintiff does not replead his claim within that timeframe, the court will deem his claim against Star Security Guard Training Co. dismissed with prejudice.

13

**ORDERED** that a courtesy copy of the summons, complaint, and this order shall be served upon the New York State Attorney General.

The Clerk is respectfully requested to serve a copy of this Memorandum and Order on plaintiff and note service on the docket.

**SO ORDERED.**

/S/

_____
KIYO A. MATSUMOTO
United States District Judge

Dated: Brooklyn, New York
      November 2, 2011